**GREGORY T. MURPHY**
California State Bar No. 245505
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: gregory_murphy@fd.org

Attorneys for Rodney Parker

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>RODNEY PARKER,<br><br>    Defendant. | Case No. 08CR0854-LAB-01<br><br>DATE:  May 5, 2008<br>TIME:  2:00 p.m.<br><br>**NOTICE OF MOTIONS & MOTIONS TO:**<br><br>**A)** **DISMISS THE INDICTMENT DUE TO A RACIALLY MOTIVATED INVESTIGATION;**<br>**B)** **SUPPRESS DUE TO UNLAWFUL SEIZURE;**<br>**C)** **SUPPRESS DUE TO UNLAWFULLY PROLONGED STOP;**<br>**D)** **SUPPRESS BASED ON INTERROGATION IN VIOLATION OF MIRANDA;**<br>**E)** **SUPPRESS INVOLUNTARY STATEMENTS;**<br>**F)** **SUPPRESS FOR VIOLATION OF THE ELECTRONIC COMMUNICATIONS ACT;**<br>**G)** **SUPPRESS FRUITS OF UNLAWFUL SEARCH;**<br>**H)** **DISMISS UNCONSTITUTIONAL STATUTE;**<br>**I)** **COMPEL DISCOVERY;**<br>**J)** **COMPEL PRODUCTION OF GRAND JURY TRANSCRIPTS;**<br>**K)** **DISMISS COUNT THREE; AND**<br>**L)** **MOTION FOR LEAVE TO FILE FURTHER MOTIONS.** |

/ / /

1  TO:    KAREN P. HEWITT, UNITED STATES ATTORNEY; AND
          JOSEPH J.M. ORABONA, ASSISTANT UNITED STATES ATTORNEY:

2

3        PLEASE TAKE NOTICE that, on May 5, 2008, at 2:00 p.m., or as soon thereafter as counsel may

4  be heard, the defendant, Rodney Parker, by and through his counsel, Gregory T. Murphy and

5  Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the following motions.

6                                              **MOTIONS**

7        The defendant, Rodney Parker, by and through his attorneys, Gregory Murphy and Federal Defenders

8  of San Diego, Inc., pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and

9  all other applicable statutes, case law and local rules, hereby moves this Court for an order to:

10        A)    Dismiss the Indictment Due to a Racially Motivated Investigation;

11        B)    Suppress Due to Unlawful Seizure;

12        C)    Suppress Due to Unlawfully Prolonged Stop;

13        D)    Suppress Based on Interrogation in Violation of Miranda;

14        E)    Suppress Involuntary Statements;

15        F)    Suppress for Violation of the Electronic Communications Act;

16        G)    Suppress Fruits of Unlawful Search;

17        H)    Dismiss Unconstitutional Statute;

18        I)    Compel Discovery;

19        J)    Compel Production of Grand Jury Transcripts;

20        K)    Dismiss Count Three; and

21        L)    Motion for Leave to File Further Motions

22        These motions are based upon the instant motions and notice of motions, the attached statement of

23  facts and memorandum of points and authorities, and all other materials that may come to this Court's

24  attention at the time of the hearing on these motions.

25                                          Respectfully submitted,

26  DATED:    April 14, 2008              /s/ Gregory T. Murphy

27                                        **GREGORY T. MURPHY**
                                          Federal Defenders of San Diego, Inc.

28                                        Attorneys for Rodney Parker

**GREGORY T. MURPHY**
California State Bar No. 245505
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: gregory_murphy@fd.org

Attorneys for Rodney Parker

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE LARRY A. BURNS)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR0854-LAB-01 |
| | ) | |
| Plaintiff, | ) | DATE:        May 5, 2008 |
| | ) | TIME:         2:00 p.m. |
| v. | ) | |
| | ) | **MEMORANDUM OF POINTS AND** |
| RODNEY PARKER, | ) | **AUTHORITIES IN SUPPORT OF** |
| | ) | **MR. PARKER'S MOTIONS** |
| Defendant. | ) | |
| | ) | **EVIDENTIARY HEARING REQUESTED** |

**I.**

**INTRODUCTION**

The agents and sheriff's deputies responsible for Mr. Parker's arrest committed numerous and flagrant violations of the federal constitution and Electronic Communications Act. Specifically, the agents and officers initiated their investigation based only on Mr. Parker's perceived race, instigated a stop that was not supported by any objectively reasonable facts, exceeded the lawful duration of any conceivably proper stop, unlawfully intercepted Mr. Parker's private communications, and exceeded the scope of their lawful authority to search both his car and his home. These violations are compounded by apparent misrepresentations to the grand jury. For these reasons, the physical evidence and statements in this case should be suppressed, and the case against Mr. Parker should be dismissed.

/ / /

/ / /

3

1    Mr. Parker also challenges the constitutionality of the drug and gun statutes. Finally, because the

2    prosecutor has provided virtually no discovery in this case, he asks leave to file further motions as defense

3    counsel learns details about this case.

4                                                    **II.**

5                                                  **FACTS[1]**

6    **A.    Mr. Parker's Criminal History**

7        The Government alleges that Mr. Parker was convicted of a violation of California Penal Code

8    section 273.5(a) on or about September 9, 1997. See Indictment, p.1.

9    **B.    Gun Show Surveillance**

10       On February 16, 2008, ATF and ICE Special Agents conducted surveillance of the West Gun show

11   at the Del Mar Fairgrounds. At approximately 1:15 p.m., Special Agent Wakelin, apparently with the ATF,

12   observed a male he believed to be Hispanic enter the gun show parking lot with a woman he perceived as

13   white. Special Agent Wakelin observed what he believed to be "prison-type" tattoos on the arms of the man

14   he perceived as Hispanic.[2]

15       Special Agent Wakelin concluded through records checks that Mr. Parker was the registered owner

16   of the car, and that he had been convicted of two felonies. Approximately 3 hours later, Special Agent

17   Wakelin observed Mr. Parker and his co-defendant return to the vehicle. Mr. Parker carried several bags, one

18   of which appeared to Special Agent Wakelin to contain a "box" "similar in shape and apparent weight to a

19   standard box of ammunition."

20       Neither Special Agent Wakelin's report nor any rough notes have been produced to the defense.

21   **C.    Mr. Parker's Arrest**

22       Immediately after Mr. Parker and his co-defendant, Angela  left the fairgrounds, San Diego Sheriff's

23   Department Detective Conrad Berlinsky initiated a traffic stop because "he observed that it was in violation

24   / / /

25

26   ───────────────

27       [1]For the most part, these "facts" are taken from the limited discovery provided by the government. Mr. Parker does not concede the accuracy of the agents' accounts.

28       [2]These allegedly "prison-type" tattoos are the words "Hot Rod," one on each arm. "Hot Rod" is Rodney Parker's mother's nickname for him.

                                                    4

1  of a California Vehicle code regulating window tint." In fact, the window tinting was factory stock and

2  complied with California regulations.

3       Some time after Detective Berlinsky obtained valid California drivers licenses for both occupants

4  of the vehicle, ATF Special Agents Wakelin and Beals approached Mr. Parker. Special Agent Wakelin

5  allegedly advised Mr. Parker that "he was not under arrest and that he did not have to talk to him." He

6  nonetheless ordered Mr. Parker to get out of the vehicle. By this time, Mr. Parker was surrounded by two

7  sheriff's vehicles, two unmarked cars, and a total of seven law enforcement officers. Detective Berlinsky did

8  not return his drivers' license.

9       In response to questioning, Mr. Parker allegedly admitted to having purchased ammunition for his

10 uncle in law and to having been convicted of a felony. No agent advised Mr. Parker of his Miranda rights.

11 He was arrested for being a felon in possession of ammunition.

12 **D.    Search of the Vehicle**

13      After Mr. Parker and his co-defendant were arrested, Special Agents Wakelin, Beals, and ICE Special

14 Agent Pryor conducted a "search incident to arrest/tow inventory" of the vehicle's interior. Agent Beals

15 removed the center console, which he perceived to be "loose and not secured to the rest of the vehicle's

16 interior." Underneath the center console, the agents allegedly discovered several firearms, ammunition, a cell

17 phone, a holster, a gun safety booklet, a Army Field Manual booklet on "booby traps," and several California

18 drivers licenses. Agents also located vehicle registration documents and an alleged "pay and owe ledger" in

19 the center console of the vehicle. Agents then removed the speakers and the remaining paneling from the

20 vehicle.

21      To date, the government has not provided any photos or photocopies of the items allegedly seized

22 during this search. They have not provided photos of the vehicle.

23 **E.    Surveillance of Mr. Parker and Ms. Wittmer**

24      ATF Special Agent Beals placed a recording device in his vehicle before placing Mr. Parker and his

25 co-defendant in the vehicle. The car was unmarked. There were no internal indicia that the vehicle was a law

26 enforcement vehicle. It had no onboard computer or screen separating the back seat from the driver's seat.

27 The agents recorded approximately one hour of conversation between Mr. Parker and Ms. Wittmer. They

28 were alone in the vehicle for that time.

1    Although Mr. Parker and Ms. Wittmer are charged with conspiring to make a false and fictitious

2 written statement to a licensed federal firearms dealer, the recording of the conversation contains no evidence

3 of such an agreement.

4    Defense counsel has not yet received the request for authorization to intercept oral communications.

5 **F.    Search of Mr. Parker's House**

6    Agents then obtained a search warrant for the house Mr. Parker shares with others.  The government

7 has not yet provided the agent's application for a search warrant or the affidavit in support thereof.

8    The search allegedly turned up the quantity of marijuana charged in Count 5 and a box of

9 ammunition in a shared cabinet in the garage.  Agents also seized a variety of powders, including a dietary

10 supplement for Mr. Parker's roommate's dog.

11                                    **III.**

12                                   **MOTIONS**

13 **A.    The Court Should Dismiss the Indictment Due to a Racially Motivated Investigation**

14    The Equal Protection Clause prohibits "selective enforcement of the law based on considerations

15 such as race." Whren v. United States, 517 U.S. 806, 813 (1996).   Accordingly, as the Sixth Circuit has

16 noted:

17        If law enforcement adopts a policy, employs a practice, or in a given situation takes steps
         to initiate an investigation of a citizen based solely upon that citizen's race, without more,
18        then a violation of the Equal Protection Clause has occurred

19 United States v. Avery, 137 F.3d 343 (6th Cir.1997) (emphasis added).

20    An equal protection violation in the initiation of investigation is fatal to the indictment.  United

21 States v. Cuevas-Ceja, 58 F.Supp.2d 1175 (D.Or., 1999). If Mr. Parker was "targeted for investigation based

22 solely on [his] race or ethnicity, the indictment returned against [him] is constitutionally flawed and must be

23 dismissed." Id.

24    Although defense counsel has only received an incomplete, unsigned and undated narrative of events

25 detailing the agents' investigation of Mr. Parker on the day of his arrest, that document--as well as facts to be

26 produced at the time of the hearing on this motion--make clear that the agents initiated their investigation of

27 Mr. Parker based solely on Special Agent Wakelin's belief that Mr. Parker was a "Hispanic" shopping for a

28 / / /

                                        6

gun.[3]  As far as the limited discovery produced to date shows, Special Agent Wakelin knew nothing at all about Mr. Parker, other than his perceived race, before he initiated an investigation.  Indeed, as evidenced by the ICE agents's involvement, this task force's purpose was likely to investigate the purchase of firearms by aliens.[4]  It therefore seems plain--absent additional facts--that Mr. Parker would not have caught Agent Wakelin's attention had he not perceived him to be "Hispanic."  Accordingly, the indictment against Mr. Parker must be dismissed.[5]

In the alternative, the Court should suppress the fruits of the subsequent arrest and search under the exclusionary rule.  See United States v. Navarro-Camacho, 186 F.3d 701-711 (6th Cir. 1999)(Moore, J. concurring).

**B.     Detective Berlinsky stopped Mr. Parker without Probable Cause or Reasonable Suspicion**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances."  Whren v. United States, 517 U.S. 806 (1996).  "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  Id.  A brief, investigatory stop also may be justified by the officer's reasonable suspicion of wrongdoing.  United States v. King, 244 F.3d 736, 738 (9th Cir. 2001).

/ / /

---

[3]Agent Wakelin also claims to have identified "prison-type" tattoos on Mr. Parker's arms. In light of Mr. Parker's actual arm tattoos, which Mr. Parker offers to show the Court at the time of the hearing on this motion, the agent's claim cannot be considered objectively reasonable and should be disregarded.

[4]Mr. Parker does not argue that such an investigation is always improper, just that race cannot be the only reason for commencing an investigation of person otherwise engaged in apparently lawful conduct.

[5] Notably, in the suppression context, courts are precluded from considering race or ethnicity as a matter of law, and may not rely upon them in finding probable cause or reasonable suspicion.  United States v. Montero-Camargo, 208 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc) ("Hispanic appearance is, in general, of such little probative value that it may not be considered as a relevant factor where particularized or individualized suspicion is required.")  United States v. Montero-Camargo, 208 F.3d 1122, 1135 (9th Cir., 2000)
.

7

1    The government bears the burden of establishing the validity of a warrantless search and seizure.

2  Chimel v. California, 395 U.S. 752, 762 (1969).

3    The existence of "probable cause" depends on whether "the facts and circumstances within the

4  arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to

5  warrant a prudent man in believing that the arrestee had committed or was committing an offense." Beck v

6  Ohio, 379 US 89 (1964).  Likewise, reasonable suspicion requires "a particularized and objective basis for

7  suspecting the particular person stopped of criminal activity.'" King, 244 F.3d at 738(internal citations omitted

8  and emphasis added).  Under either standard, the stop must be "objectively justifiable" based on facts known

9  to the officer.  Whren, 517 U.S. at 813.  Accordingly, "the officer's mistake of law regarding the applicable

10  traffic ordinance precludes a finding of reasonable suspicion" or probable cause. King, 244 F.3d at 737 (9th

11  Cir. 2001).

12    In this case, the government will not be able to establish that the dealer stock tinting on his windows

13  violated the California vehicle code.  Pursuant to King, this mistake of law precludes a finding of reasonable

14  suspicion or probable cause.  Because Detective Berlinsky therefore had no lawful justification to stop Mr.

15  Parker, all evidence obtained from the unlawful seizure is tainted and must be suppressed.  Wong Sun v.

16  United States, 371 U.S. 471 (1963).

17  **C.    The Agents Unlawfully Prolonged Any Lawful Stop**

18    Assuming, without conceding, that Detective Berlinsky lawfully stopped Mr. Parker to investigate

19  a violation of the California Vehicle Code, Mr. Parker's statements nonetheless must be suppressed.  Unless

20  additional suspicious facts arise, an investigatory stop must be strictly limited in scope and duration to the

21  time needed to confirm or dispel the officer's suspicions.  See Florida v. Royer, 460 U.S. 491, 500 (1983)

22  ("This much...is clear:  an investigative detention must be temporary and last no longer than is necessary to

23  effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive

24  means reasonably available to verify or dispel the officer's suspicion in a short period of time").  "The critical

25  inquiry is whether the officers diligently pursued a means of investigation that was likely to confirm or dispel

26  their suspicions quickly, during which time it was necessary to detain the defendant." United States v. Sharpe,

27  470 U.S. 675, 686 (1985).

28  / / /

1    An evidentiary hearing will reveal that Detective Berlinsky took <u>no</u> steps to confirm or dispel his

2 suspicion that Mr. Parker's window tinting violated California regulations.  Because a close look alone would

3 have been sufficient to established that Mr. Parker was in compliance, <u>any</u> further detention amounted to an

4 illegal arrest.[6]  Mr. Parker's statements and the evidence seized from his vehicle must be suppressed.

5 **D.    The Officers Unlawfully Interrogated Mr. Parker in Violation of <u>Miranda</u>**

6    The prosecution may not use statements, whether exculpatory or inculpatory, stemming from a

7 custodial interrogation of Mr. Parker unless it demonstrates the use of procedural safeguards effective to

8 secure the privilege against self-incrimination.  <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966).[7]  Custodial

9 interrogation is questioning initiated by law enforcement officers after a person has been taken into custody

10 or otherwise deprived of his freedom of action in any significant way.  <u>Id</u>. <u>See</u> <u>Orozco v. Texas</u>, 394 U.S. 324,

11 327 (1969).

12    There can be no question that Mr. Parker was in custody.  Agents ordered Mr. Parker out of the car

13 and surrounded him.  The sheriffs deputies kept their hands on their guns.  Indeed, Mr. Parker could not have

14 felt free to leave while Detective Berlinsky retained his drivers' license.  Because the government will not be

15 able to show that the agents properly administered the <u>Miranda</u> warnings before questioning or that any

16 alleged waiver of the rights was voluntary, knowing, and intelligent, the government cannot use statements

17 or evidence obtained as a result of any custodial interrogation that occurred while Mr. Parker was in custody.

18 <u>Miranda</u>, 384 U.S. at 479.

19 / / /

20 / / /

21 / / /

22

23    [6]Under the circumstances, the request for Mr. Parker and Ms. Wittmer's driver's licenses

24 was also unlawful.  <u>See</u> <u>United States v. Henderson</u>, 463 F.3d 27, 46-47 (1st Cir. 2006) (Officer
   could not demand a driver's identifying information for reasons of officer safety when the officer

25 did not perceive any danger, there was no reasonable suspicion that the defendant was engaged in
   any illegal activity, the stop was not in a dangerous location, and the traffic violations for which

26 the defendant was pulled over for did not "raise the specter of illegal activity.").

27

28    [7]In <u>Dickerson v. United States</u>, 530 U.S. 428, 120 S. Ct. 2326 (2000), the Supreme Court
   held that <u>Miranda</u> rights are no longer merely prophylactic, but are of constitutional dimension.
   <u>Id</u>. at 2336 ("we conclude that <u>Miranda</u> announced a constitutional rule").

**E.      The Government Cannot Meet its Burden of Proving Mr. Parker's Statements Were Made Voluntarily**

The Government bears the burden to prove that Mr. Parker's statements to the agents were obtained independently of any law enforcement coercion and must do so by a preponderance of the evidence. United States v. Hanwood, 350 F.3d 1024, 1027 (9th Cir. 2003).  A defendant is deprived of due process if the Government uses his involuntary confession against him at trial. Jackson v. Denny, 378 U.S. 368, 377 (1964). "In evaluating voluntariness, the 'test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne.'" United States v. Male Juvenile, 280 F.3d 1008, 1022 (9th Cir. 2002) (quoting Derrick v. Peterson, 924 F.2d 813, 817 (9th Cir. 1991)).

The Government cannot meet its burden in this case, and absent evidence that the statements were voluntarily made, this Court should suppress Mr. Parker's statements.

**F.      Government Agents Unlawfully Intercepted Mr. Parker's "Oral Communications" in Violation of 18 U.S.C. § 2511**

Subject to certain narrow exceptions, Title I of the Electronics Communications Privacy Act ("Title I") prohibits the interception of any "oral communication" though the use of any electronic, mechanical or other device.  See 18 U.S.C. § 2511(1)(a) (prohibiting the interception of oral communications) and 18 U.S.C. § 2510(4) (defining "intercept").  An oral communication is "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."  18 U.S.C. § 2510(2).

When government agents intercept an defendant's "oral communication" without first obtaining required authorization,  the contents of the communication, as wells as any evidence derived therefrom, must be suppressed.  See 18 U.S.C. 2518(10)(a).

Here, Agents Wakelin and Beals flagrantly violated Title I by placing a recording device in the rear of their vehicle with Mr. Parker and his girlfriend.  In fact, the limited discovery provided to date shows that the agents endeavored to give Mr. Parker and his girlfriend the reasonable impression that they were speaking in private.  The agents left the couple alone and remained out of earshot.  They made a show of not hearing Ms. Wittmer when she tried to get their attention.  They knew that Mr. Parker and Ms. Wittmer were romantic

1  partners.  The agents chose to put the couple in an unmarked sedan, rather than in one of the two marked

2  patrol cars present at the scene.

3      This case is not like United States v. Jurado, 26 Fed.Appx. 640 (9th Cir. 2001)(unpublished), the

4  only Ninth Circuit case to address listening devices placed in police vehicles.  In Jurado, the Ninth Circuit

5  concluded that the defendants had not indicated a subjective expectation of privacy in the back of a patrol car

6  because they had wondered aloud if they were being recorded.  Id. The Ninth Circuit expressly declined to

7  "reach the question of whether there is an objective expectation of privacy in a patrol car." Id. (emphasis

8  added).

9      In this case, by contrast, even the incomplete transcript provided by the government leaves no doubt

10  that Mr. Parker and Ms. Wittmer had a subjective expectation of privacy.  Their conversation ranged from

11  the frustrated to the intimate.  Unlike in Jurado, Mr. Parker and Ms. Wittmer plainly assumed the agents could

12  not hear them.  In fact, on several occasions, they called out for the agents' attention.

13      Although the Ninth Circuit has reserved on the issue, the argument that no one ever has an

14  objectively reasonable expectation of privacy in any car used for law enforcement purposes is doomed to fail.

15  As the Supreme Court wrote more than forty years ago, "the Fourth Amendment protects people, not places."

16  Katz v. United States, 389 U.S. 347, 351 (1967).[8]  In this case, an evidentiary hearing will show that the

17  agents manufactured circumstances that created objectively reasonable expectation of privacy on the part of

18  Mr. Parker and his romantic partner.  Accordingly, the recorded statements and any evidence derived from

19  them must be suppressed.

20  ///

21  ///

22

23      [8] In Katz, 389 U.S. at 351, the Supreme Court specifically chastised the parties for

24  focusing undue attention on the location of the intercepted conversation: "Because of the
   misleading way the issues have been formulated, the parties have attached great significance to

25  the characterization of the telephone booth from which the petitioner placed his calls. The
   petitioner has strenuously argued that the booth was a 'constitutionally protected area.' The

26  Government has maintained with equal vigor that it was not. But this effort to decide whether or
   not a given 'area,' viewed in the abstract, is 'constitutionally protected' deflects attention from

27  the problem presented by this case...What a person knowingly exposes to the public, even in his
   own home or office, is not a subject of Fourth Amendment protection...But what he seeks to

28  preserve as private, even in an area accessible to the public, may be constitutionally protected."

1 **G.      The Agents Unlawfully Searched the Vehicle**

2      Apparently uncertain how to justify his actions, Agent Wakelin's probable cause statement describes

3 the removal of the vehicle's center console as a "search incident to arrest/inventory search."  In fact, even

4 assuming that Mr. Parker was lawfully arrested, neither theory permits the wholesale, warrantless dismantling

5 of a suspect's vehicle.  All evidence seized as a result of this illegal search should be suppressed.

6      When an officer makes a lawful arrest of the occupants of an automobile, or recent occupants of a

7 vehicle, the officers may contemporaneously search the passenger compartment and any containers, but not

8 the trunk, for weapons.  Thornton v. United States, 541 U.S. 615 (2004); New York v. Belton, 453 U.S. 454,

9 460-61 (1981).  This "bright line rule" protects officers' safety and prevents the destruction of evidence.

10 Chimel v. California, 395 U.S. 752, 773 (1969). Importantly, however, nothing in Belton or Chimel permits

11 destructive searches or searches into areas not accessible to the driver.[9]  The correct procedure for such an

12 intrusive search is to hold the vehicle for the time needed to get a warrant.  Because the agents in this case

13 chose to bypass the 4th Amendment's warrant requirement by removing first the center console, then the

14 speakers and paneling without judicial authorization, the evidence found therein should be suppressed.

15      Likewise, the scope of an "inventory search" must be reasonably related to protection of the

16 individual's property and the state's interest in being free from false claims of theft and  damage. The scope

17 of such inventories, pursuant to policy, may include closed containers, provided that the inventory is not a

18 pretext to search indiscriminately for incriminating evidence. Florida v. Wells, 495 U.S. 1, 4 (1990);  The

19 failure of police to correctly follow state law on inventory searches requires suppression of evidence

20 uncovered during the search. United States v. Ramos-Oseguera, 120 F.3d 1028, 1035-36 (9th Cir. 1997). As

21 no state law permits the warrantless disassembly of a vehicle for inventory purposes, Special Agent Wakelin's

22 alternative justification also fails.

23 **H.      18 U.S.C. § 922(g) is Unconstitutional Facially and as Applied**

24      The Ninth Circuit has previously upheld the constitutionality of felon in possession statutes against

25 commerce clause and Second Amendment attacks.    E.g. Silveira v. Lockyer, 312 F.3d 1052 (9th

26

27 _____

28      [9]Indeed, even at the border,  a destructive search is not be permitted absent heightened
suspicion.  E.g. United States v. Rivas, 157 F.3d 364, 367 (5th Cir. 1998) (drilling into the frame
of a vehicle requires reasonable suspicion).

1   Cir.2002)(Second Amendment); United States v. Stewart, 451 F.3d 1071 (9th Cir. 2006) (commerce clause).

2   Both holdings are in doubt, however, in light of District of Columbia v. Heller, No. 07-290, now pending

3   before the Supreme Court.  Mr. Parker therefore urges this Court to conclude that 18 U.S.C. § 922(g) is

4   unconstitutional under either or both theories, either facially or as applied.[10]

5   **I.        Motion to Compel Discovery**

6          Mr. Parker moves this court to compel the government to immediately provide all discovery to which

7   he is entitled.  This request is not limited to those items that the prosecutor knows of.  It includes all discovery

8   listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other]

9   agencies."  See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).  This specifically includes the ATF,

10  ICE, and San Diego Sheriff's department.

11          1.      The Defendant's Statements.  The government must disclose to Mr. Parker *all* copies of any

12  written or recorded statements made by Mr. Parker; the substance of any statements made by Mr. Parker  that

13  the government intends to offer in evidence at trial; any response by Mr. Parker to interrogation; the substance

14  of any oral statements that the government intends to introduce at trial and any written summaries of Mr.

15  Parker's oral statements contained in the handwritten notes of the government agent; any response to any

16  Miranda warnings that may have been given to Mr. Parker; and any other statements by Mr. Parker.  Fed. R.

17  Crim. P. 16(a)(1)(A) and (B).  The Advisory Committee Notes and the 1991 amendments to Rule 16 make

18  clear that the government must reveal *all* Mr. Parker's statements, whether oral or written, regardless of

19  whether the government intends to make any use of those statements.

20          2.      Arrest Reports, Notes and Dispatch Tapes.  Mr. Parker also specifically requests that all arrest

21  reports, notes and dispatch or any other tapes that relate to the circumstances surrounding her arrest or any

22  questioning, if such reports have not already been produced *in their entirety*, be turned over to him.  This

23  request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in

24  which statements of Mr. Parker or any other discoverable material is contained.  Mr. Parker includes in this

25  request any redacted portions of the Report of Investigation ("ROI") and any subsequent ROIs that the case

26  agent or any other agent has written.  This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and (B) and

27

28          [10]Defense counsel offers to submit additional briefing on these issues should the Court
    desire.

1    Brady v. Maryland, 373 U.S. 83 (1963).  See also Loux v. United States, 389 F.2d 911 (9th Cir. 1968).  Arrest

2    reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution

3    reports pertaining to Mr. Parker are available under Fed. R. Crim. P. 16(a)(1)(A) and (B), Fed. R. Crim. P.

4    26.2 and 12(I).  Preservation of rough notes is requested, whether or not the government deems them

5    discoverable.

6          3.       Brady Material.  Mr. Parker requests all documents, statements, agents' reports, and tangible

7    evidence favorable to him on the issue of guilt and/or that affects the credibility of the government's case.

8    Impeachment and exculpatory evidence both fall within Brady's definition of evidence favorable to the

9    accused.  United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

10         4.       Any Information That May Result in a Lower Sentence.  As discussed above, any information

11   that may result in a more favorable sentence must also be disclosed pursuant to Brady, 373 U.S. 83.  The

12   government must disclose any cooperation or attempted cooperation by Mr. Parker, as well as any information

13   that could affect any base offense level or specific offense characteristic under Chapter Two of the United

14   States Sentencing Commission Guidelines Manual ("Guidelines").  Also included in this request is any

15   information relevant to a Chapter Three adjustment, a determination of Mr. Parker's criminal history, or any

16   other application of the Guidelines.

17         5.       The Defendant's Prior Record.  Evidence of a prior record is available under

18   Fed. R. Crim. P. 16(a)(1)(D).  Mr. Parker specifically requests a complete copy of any criminal record.

19         6.       Any Proposed 404(b) Evidence.  Evidence of prior similar acts is discoverable under

20   Fed. R. Crim. P. 16(a)(1)(D) and Fed. R. Evid. 404(b) and 609.  In addition, under Fed. R. Evid. 404(b),

21   "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the

22   general nature . . .." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial.

23   Sufficient notice requires the government to "articulate precisely the evidential hypothesis by which a fact of

24   consequence may be inferred from the other acts evidence."  United States v. Mehrmanesh, 689 F.2d 822, 830

25   (9th Cir. 1982) (emphasis added; internal citations omitted); see also United States v. Brooke, 4 F.3d 1480,

26   1483 (9th Cir. 1993) (reaffirming Mehrmanesh and reversing convictions).  Mr. Parker requests that such

27   notice be given three weeks before trial to give the defense time to adequately investigate and prepare for trial.

28   / / /

1    7.    <u>Evidence Seized</u>.  Evidence seized as a result of any search, either warrantless or with a

2  warrant, is discoverable under Fed. R. Crim. P. 16(a)(1)(E).

3    8.    <u>Request for Preservation of Evidence</u>.  The defense specifically requests that all dispatch

4  tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession,

5  custody, or care of the government and that relate to the arrest or the events leading to the arrest in this case

6  be preserved.  This request includes, but is not limited to vehicle involved in the case, the firearms, the alleged

7  contraband, Mr. Parker's personal effects, and any evidence seized from Mr. Parker or any third party.  Mr.

8  Parker requests that the prosecutor be ordered to question all the agencies and individuals involved in the

9  prosecution and investigation of this case to determine if such evidence exists, and if it does exist, to inform

10  those parties to preserve any such evidence.

11    9.    <u>Henthorn Material</u>.  Mr. Parker requests that the Assistant United States Attorney ("AUSA")

12  assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved

13  in the present case for impeachment material.  <u>See</u> <u>Kyles v. Whitley</u>, 514 U.S. 437, 438 (1995) (holding that

14  "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the

15  government's behalf in the case, including the police"); <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir.

16  1991).  This request includes, but is not limited to, any complaints filed (by a member of the public, by

17  another agent, or any other person) against the agent, whether or not the investigating authority has taken any

18  action, as well as any matter for which a disciplinary review was undertaken, whether or not any disciplinary

19  action was ultimately recommended.  Mr. Parker further requests production of any such information at least

20  one week prior to the motion hearing and two weeks prior to trial.  If the prosecutor is uncertain whether

21  certain information should be disclosed pursuant to this request, this information should be produced to the

22  Court in advance of the motion hearing and the trial for an in camera inspection.

23    10.    <u>Tangible Objects</u>.  Mr. Parker requests the opportunity to inspect, copy, and test, as necessary,

24  all other documents and tangible objects, including photographs, books, papers, documents, alleged narcotics,

25  fingerprint analyses, vehicles, or copies of portions thereof, that are material to the defense or intended for

26  use in the government's case-in-chief or were obtained from or belong to Mr. Parker.  Fed. R. Crim. P.

27  16(a)(1)(E).  Specifically, Mr. Parker requests **color copies** of all photographs in the government's possession

28  of the alleged narcotics and firearms and the vehicle in which the narcotics were found.

11. <u>Expert Witnesses</u>. Mr. Parker requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(G). This summary should include a description of the witness' opinion(s), as well as the bases and the reasons for the opinion(s). <u>See</u> <u>United States v. Duvall</u>, 272 F.3d 825 (7th Cir. 2001) (finding that government's written expert notice did not adequately summarize or describe police detective's testimony in drug prosecution where notice provided only a list of the general subject matters to be covered and failed to identify what opinion the expert would offer on those subjects). This request includes, but is not limited to, disclosure of the qualifications of any government witness who will testify that he understands and/or speaks Spanish or any other foreign language that may have been used during the course of an interview with Mr. Parker or any other witness. Mr. Parker requests the notice of expert testimony be provided at a minimum of three weeks prior to trial so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the government's expert and obtain a hearing in advance of trial to determine the admissibility of qualifications of any expert. <u>See</u> <u>Kumho v. Carmichael Tire Co.</u>, 526 U.S. 137, 119 S. Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings").

12. <u>Impeachment evidence</u>. Mr. Parker requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to Mr. Parker. <u>See</u> Fed. R. Evid. 608, 609 and 613. Such evidence is discoverable under <u>Brady</u>, 373 U.S. 83. <u>See</u> <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988) (witness' prior record); <u>Thomas v. United States</u>, 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility).

13. <u>Evidence of Criminal Investigation of Any Government Witness</u>. Mr. Parker requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. <u>United States v. Chitty</u>, 760 F.2d 425 (2d Cir. 1985).

14. <u>Evidence of Bias or Motive to Lie</u>. Mr. Parker requests evidence that any prospective government witness is biased or prejudiced against Mr. Parker, or has a motive to falsify or distort his or her testimony. <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39 (1987); <u>Strifler</u>, 851 F.2d 1197.

/ / /

1          15.    _Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity_.

2    Mr. Fernandez requests any evidence, including any medical or psychiatric report or evaluation, tending to

3    show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired;

4    and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an

5    alcoholic.  _Strifler_, 851 F.2d 1197; _Chavis v. North Carolina_, 637 F.2d 213, 224 (4th Cir. 1980).

6          16.    _Witness Addresses_.  Mr. Parker requests the name and last known address of each prospective

7    government witness.  _See United States v. Napue_, 834 F.2d 1311 (7th Cir. 1987); _United States v. Tucker_,

8    716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); _United_

9    _States v. Cook_, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses).  Mr. Parker

10   also requests the name and last known address of every witness to the crime or crimes charged (or any of the

11   overt acts committed in furtherance thereof) who will _not_ be called as a government witness.  _United States_

12   _v. Cadet_, 727 F.2d 1453 (9th Cir. 1984).

13         17.    _Names of Witnesses Favorable to the Defendant_.  Mr. Parker requests the name of any

14   witness who made any arguably favorable statement concerning Mr. Parker or who could not identify him or

15   who was unsure of her identity or participation in the crime charged.  _Jackson v. Wainwright_, 390 F.2d 288

16   (5th Cir. 1968); _Chavis_, 637 F.2d at 223; _Jones v. Jago_, 575 F.2d 1164,1168 (6th Cir.1978); _Hudson v._

17   _Blackburn_, 601 F.2d 785 (5th Cir. 1979), _cert. denied_, 444 U.S. 1086 (1980).

18         18.    _Statements Relevant to the Defense_.  Mr. Parker requests disclosure of any statement that may

19   be "relevant to any possible defense or contention" that he might assert.  _United States v. Bailleaux_, 685 F.2d

20   1105 (9th Cir. 1982).  This includes grand jury transcripts that are relevant to the defense motion to dismiss

21   the indictment.

22         19.    _Jencks Act Material_.  Mr. Parker requests production in advance of the motion hearing or trial

23   of all material, including dispatch tapes, that the government must produce pursuant to the Jencks Act, 18

24   U.S.C. § 3500 and Fed. R. Crim. P. 26.2.  A verbal acknowledgment that "rough" notes constitute an accurate

25   account of the witness' interview is sufficient for the report or notes to qualify as a statement under section

26   3500(e)(1).  _Campbell v. United States_, 373 U.S. 487, 490-92 (1963); _see also United States v. Boshell_, 952

27   F.2d 1101 (9th Cir. 1991) (holding that interview notes constitutes Jencks material when an agent reviews

28   notes with the subject of the interview); _see also United States v. Riley_, 189 F.3d 802, 806-808 (9th Cir.

1999).  Advance production will avoid the possibility of delay of the motion hearing or trial to allow Mr. Parker to investigate the Jencks material.  Mr. Parker requests pre-trial disclosure of such statements to avoid unnecessary recesses and delays and to allow defense counsel to prepare for, and use properly any Jencks statements during cross-examination.

20.    Giglio Information.  Pursuant to Giglio v. United States, 405 U.S. 150 (1972), Mr. Parker requests all statements and/or promises, expressed or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information that could arguably be used for the impeachment of any government witnesses.

21.    Agreements Between the Government and Witnesses.  Mr. Parker requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local).  This request also includes any discussion with a potential witness about or advice concerning any immigration benefits, any contemplated prosecution, or any possible plea bargain, even if no bargain was made or the advice not followed.

22.    Informants and Cooperating Witnesses.  Mr. Parker requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Parker.  The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense.  Roviaro v. United States, 353 U.S. 52, 61-62 (1957).  The government must disclose any information derived from informants that exculpates or tends to exculpate Mr. Parker.

23.    Bias by Informants or Cooperating Witnesses.  Mr. Parker requests disclosure of any information indicating bias on the part of any informant or cooperating witness.  Giglio, 405 U.S. 24.  Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

24.    Personnel Records of Government Officers Involved in the Arrest.  Mr. Parker requests all citizen complaints and other related internal affairs documents involving any of the immigration officers or

1 other law enforcement officers who were involved in the investigation, arrest and interrogation of Mr. Parker.

2 See Pitchess v. Superior Court, 11 Cal. 3d 531, 539 (1974). Because of the sensitive nature of these

3 documents, defense counsel will be unable to procure them from any other source.

4         25.    Training of Relevant Law Enforcement Officers. Mr. Parker requests

5 copies of all written videotaped or otherwise recorded policies or training instructions or manuals issued by

6 all law enforcement agencies involved in the case (United States Customs Service, Border Patrol, INS,

7 Department of Homeland Security, etc.) to their employees regarding: (a) the handling of vehicles suspected

8 to be transporting contraband across the port of entry; (b) the referral to secondary inspection of persons

9 within those vehicles; (c) the detention of individuals within those vehicles; (d) the search of those vehicles

10 and the occupants of those vehicles, including the proper means of obtaining consent to search and what

11 constitutes consent to search; (e) the informing of suspects of their Constitutional rights; (f) the questioning

12 of suspects and witnesses. Mr. Parker also requests all written or otherwise attainable information regarding

13 the training of Customs agents at ports of entry in California to detect or discover contraband in vehicles

14 entering the United States, including any training offered to Border Patrol, INS, or officers of Homeland

15 Security Department, by the DEA or other law enforcement agencies or individuals.

16         26.    Performance Goals and Policy Awards. Mr. Parker requests disclosure of information

17 regarding standards used for measuring, compensating or reprimanding the conduct of all law enforcement

18 officers involved in the case (Customs, Border Patrol, INS, etc.) to the extent such information relates to the

19 detection of contraband. This request specifically includes information concerning performance goals, policy

20 awards, and the standards used by Customs for commending, demoting, or promoting agents for their

21 performance at the port of entry and their success or failure to detect illegal narcotics in general.

22         27.    Reports of Scientific Tests or Examinations. Pursuant to Fed. R. Crim. P. 16(a)(1)(F),

23 Mr. Parker requests the reports of all tests and examinations conducted upon the evidence in this case,

24 including, but not limited to, any fingerprint testing done upon any evidence seized in this case, that is within

25 the possession, custody, or control of the government, the existence of which is known, or by the exercise of

26 due diligence may become known, to the attorney for the government, and that are material to the preparation

27 of the defense or are intended for use by the government as evidence in chief at the trial.

28 / / /

28. <u>Brady Information</u>. The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

29. <u>Any Proposed 404(b) Evidence</u>. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1) and Fed. R. Evid. 404(b) and any prior convictions which would be used to impeach as noted in Fed. R. Crim. P. 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. The defendant requests notice two weeks before trial to give the defense time to investigate and prepare for trial.

30. <u>Residual Request</u>. The defendant intends by this discovery motion to invoke her rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States.

**J.      Request for Production of Grand Jury Transcripts**

Pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), the Court may authorize disclosure of a grand jury matters at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury. The indictment may be dismissed for prosecutorial misconduct before the grand jury--including unintentional misconduct--that prejudices the defendant. <u>See</u> <u>Bank of Nova Scotia v. United States</u>, 487 U.S. 250, 255 (1988).

Here, the incomplete transcript provided in discovery compels the conclusion that government misled the grand jury as to the nature of the alleged criminal agreement between Mr. Parker and Ms. Wittmer identified in Count One. Specifically, while Mr. Parker and Ms. Wittmer's recorded conversation includes references to guns, their dialog contains no reference at all to the firearm alleged in that count. The absence of any support in the discovery for the government's allegation raises the likelihood that the grand jury was misled about the evidence before it. Furthermore, because California Penal Code § 273.5(a) is a "wobbler" it is necessarily a "crime punishable by imprisonment for a term exceeding one year" as alleged in the

/ / /

20

introductory allegations. Production of grand jury transcripts therefore is appropriate required to determine

whether misleading or incomplete statements amounting to misconduct compels dismissal of the indictment.

**K.    Count Three Is Duplicitous and Should Be Dismissed**

Count Three should be dismissed because it is duplicitous. Federal Rule of Criminal Procedure 8(a)

prohibits charging two or more offenses in the same count of an indictment. "Duplicity is the joining of two

or more distinct offenses in a single count, so that the general verdict does not reveal exactly which crimes

the jury found the defendant committed." United States v. Gomberg, 715 F.2d 843, 845 (93d Cir. 1983).

Combining offenses in one count creates several problems:

> (1) The jury in a general verdict cannot make a finding on each offense; (2) A defendant may not have proper notice of the charges against him; (3) It may be difficult if not impossible to make correct evidentiary rulings; (4) A jury may convict a defendant without unanimously agreeing on the same offense; (5) A defendant may be prejudiced in a subsequent double jeopardy defense; (6) A defendant may be prejudiced at sentencing; and (7) A defendant may face limited review on appeal.

United States v. Gray, 101 F. Supp. 2d 580, 583 (E.D. Tenn. 2000); see also United States v. Aguilar, 756

F.2d 1418, 1420 n.2 (9th Cir. 1985); United States v. UCO Oil Co., 546 F.2d 833, 835 (9th Cir. 1976).

Here, Count Three is duplicitous. It alleges two violations based on both the possession of two

firearms and the possession of ammunition. Because Count three One charges more than one offense, it is

duplicitous, and this Court should dismiss the count. See United States v. Walker, 380 F.3d 391 (8th Cir.

2004) (finding that the possession of a firearm and ammunition are separate offenses under section 922(g)(1)).

**L.    Motion for Leave to File Further Motions**

The government has provided almost no relevant discovery to date. Moreover, most discovery was

produced near 5:00 pm on April 11, 2008, the last business day before these motions were due. As new

information surfaces – via discovery provided by government, defense investigation, or an order of this

court – the defense may need to file further motions or to supplement existing motions. Accordingly, Mr.

Parker requests leave to file further motions at a later date.

Respectfully submitted,

DATED:        April 14, 2008                /s/ Gregory T. Murphy
                                            **GREGORY T. MURPHY**
                                            Federal Defenders of San Diego, Inc.
                                            Attorneys for Rodney Parker